## James F. Temple *vs.* Frank Gilbert.

Third Judicial District, Bridgeport, October Term, 1912.

Hall, C. J., Prentice, Thayer, Roraback and Wheeler, Js.

The defendant was described as "Frank Gilbert, now of parts unknown, County of New Haven, State of Connecticut." *Held* that this was not a description of a nonresident defendant, but merely a statement that the scrivener did not know the whereabouts of the defendant in New Haven county in this State.

The trial court may properly refuse to set aside a verdict as against the evidence, where there was some testimony upon which the jury might reasonably have reached the conclusion embodied in their verdict.

The evidence and claims of the parties in the present case reviewed, and the action of the trial court, in refusing to set aside the verdict, sustained.

In charging the jury the trial judge is not bound to use the language of the requests. It is enough if his instructions upon these points are correct and adequate.

Negligence is the failure to use that degree of care for the protection of another that the ordinarily careful and prudent man would use under like circumstances.

In the present case the defendant, a locomotive engineer, was alleged to have been negligent in allowing the water to get too low in the boiler, in consequence of which it exploded and seriously injured the plaintiff, a brakeman who was riding in the cab. *Held* that the trial court correctly charged the jury that the question for them was whether the defendant had used that degree of care and caution to keep the water at the proper point in the boiler, which the ordinarily careful and prudent engineer would use under like circumstances.

Requests to charge which require the court to pass upon contested questions of fact, or which contain hypothetical propositions unsupported by the evidence, may properly be denied. Instructions of that character, if given in their entirety, tend rather to confuse and mislead, than to enlighten, the jury.

In reciting the claims of the parties the trial judge said that upon the evidence there was no question but that the plaintiff's injuries were due to the explosion, and that the plaintiff's contention was that the explosion was due to the negligence of the defendant. The defendant insisted that the jury must have understood this as an instruction that the explosion was caused by him. *Held*

Temple *v.* Gilbert.

that the passage in question was not fairly susceptible to such criticism or construction; that its object was to emphasize the necessity of proving negligence as the ground of liability.

It is not error for the trial judge to mention in his charge matters about which there is no dispute.

Statements which, taken alone, appear objectionable, must be read and interpreted with the instructions upon that subject taken as a whole.

The defendant criticised certain statements in the charge as calculated to give the jury the impression that they were bound to assume that the engine was all right when the defendant took it from the roundhouse. *Held* that the charge in reference to that matter, taken as a whole, was not open to such stricture.

The sufficiency of the verification of a photograph, as an accurate representation, is a preliminary question of fact for the decision of the trial judge.

Such verification need not be confined to the photographer, but may come from any witness familiar with the subject-matter of the photograph.

A properly qualified expert in the operation and control of locomotive engines may state whose duty it is to examine the glass and see that a sufficient supply of water is maintained in the boiler.

A trial judge may comment on the evidence and even express his opinion upon controverted questions arising in the case, provided he neither invades the province of the jury by withdrawing from their consideration any questions of fact upon which there is evidence, nor leads them to suppose that the determination of such questions was not wholly with them.

The defendant complained that the charge as a whole did not adequately present the issues of fact and law, that it was argumentative and unduly magnified evidence favorable to the plaintiff and minimized that which favored the defendant. *Held* that these complaints were not well founded.

Argued October 24th—decided December 19th, 1912.

ACTION to recover damages for personal injuries alleged to have been caused by the defendant's negligence, brought to the Superior Court in New Haven County, where a plea in abatement and to the jurisdiction was overruled (*Gager, J.*) and the cause was afterward tried to the jury before *Gager, J.;* verdict and judgment for the plaintiff for $5,000, and appeal by the defendant. *No error.*

*Charles S. Hamilton* and *Levi N. Blydenburgh*, for the appellant (defendant).

*Walter J. Walsh*, for the appellee (plaintiff).

RORABACK, J. The defendant's plea to the jurisdiction was properly held insufficient.

The cause of abatement alleged was that the defendant was described in the writ as a nonresident of the State and service of process was not made upon him in the manner required for service upon nonresident defendants. The writ described the defendant as "now of parts unknown, County of New Haven, State of Connecticut." General words may sometimes be explained or qualified by special words which follow the general recital. In the case before us, the last clause of the description of the residence of the defendant: "County of New Haven, State of Connecticut," can serve no other purpose than to qualify and limit the general clause immediately preceding. It is not to be assumed that this part of the description was inserted without a purpose, and that just suggested is the only one that can be fairly assigned. When read in connection with the words "now of parts unknown," it seems clear that it is not a description of a nonresident of the State, but simply that the plaintiff or scrivener drafting the writ did not know where the defendant was "in New Haven County, State of Connecticut."

About three o'clock in the morning on April 9th, 1909, the plaintiff was seriously injured by the explosion of the boiler of a locomotive engine. At this time he was in the employ of the railroad company as head brakeman, and was riding in the cab of the engine, with the defendant. The defendant was in charge of the engine, which was drawing a freight-train from Bridgeport to Winsted, when the boiler of the engine

suddenly exploded with terrific force, and the plaintiff was seriously injured. The plaintiff alleged and claimed that the explosion was due to the carelessness of the engineer in failing to keep a sufficient supply of water in the boiler.

The jury found the issues in favor of the plaintiff, and rendered a verdict for him to recover $5,000, which the court refused to set aside.

The court's action, in denying the motion to set aside the verdict, in refusing to charge as requested, in the charge as given, and in its rulings upon the admission of evidence, were assigned as error by the defendant.

The main question controverted in the court below was the alleged negligence of the defendant, which necessarily involved the question as to the cause of the explosion.

The plaintiff introduced evidence tending to prove these facts: This engine came into the Bridgeport roundhouse early in the evening of the night of the explosion, when it was examined by an engine inspector, who found nothing to indicate but that the boiler and its connections were safe and in good order. The next morning after the explosion, the fire-box and crown-sheet of the boiler were examined by three experts, who testified that the explosion was caused by the failure to keep a sufficient supply of water in the boiler. Evidence was also introduced to show that the engine was in good order when it went out of the roundhouse in Bridgeport, when it was under the charge and control of the defendant, and so continued until about the time of the explosion.

There was also other evidence, of a circumstantial nature, pointing to the defendant as being responsible for the explosion.

The defendant claimed, and offered evidence to prove,

that he did not allow the water to get down in the engine boiler; that when the explosion occurred the boiler was working at about a normal pressure; that he was not bound to account for the accident; and that the trouble apparently was that the boiler, at some time prior, had been overheated, burned, and weakened, and that the boiler gave way without any warning, and without fault or negligence on his part.

"A trial court should not set aside a verdict as being against the evidence where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that they or some of them were influenced by prejudice, corruption, or partiality." *Steinert* v. *Whitcomb*, 84 Conn. 262, 79 Atl. 675.

Tested by this rule, the evidence in the present case was such as to justify the trial court in denying the motion for a new trial upon the ground that the verdict was against the evidence. There is nothing in the evidence to indicate that there was a mistake made by the jury in the application of any legal principle, or to justify the suspicion that the jury were influenced by prejudice, corruption, or partiality. On the contrary, it is apparent that the jury, from the testimony now before us, might reasonably have reached the conclusion embodied in their verdict.

Thirteen assignments of error relate to the court's refusal to charge as requested by the defendant.

The first, second, and sixth requests to charge relate to the issues between the parties and to the burden of proof.

The court did not charge in the language of these

requests, but its instruction upon these points was unexceptionable. The issues between the parties were clearly stated, and the burden of proof fairly explained in the charge.

The defendant, in the third, fourth, and fifth requests, asked the court, in effect, to charge that if the jury should find from the evidence that an accident happened, which could not have been prevented by the use of ordinary care and skill by the defendant, he would not be liable.

In this connection the court said that "the complaint says 'negligently and carelessly.' Negligence is the failure to use that degree of care for the protection of another that the ordinarily reasonably careful and prudent man would use under like circumstances. The defendant in this case was an engineer. So, as applied specifically to this case, negligence would be the failure on his part to use that degree of care and caution to keep the water at the proper point in the boiler, which the ordinarily careful and prudent engineer would use under those circumstances under which he was situated. The defendant in this case is liable or not according as he came up, in the management of that engine, to the standard of care that the law imposes. Did he, in managing that engine at the time the explosion happened and at the time just prior to the time that it happened, exercise that degree of care and caution that the ordinarily prudent and careful engineer, under similar circumstances, was bound to exercise."

These remarks were not open to objection, and were a proper statement of the law which governed this branch of the case.

The defendant, in his seventh request, asked the court to instruct the jury that if this boiler, before it was delivered to him, had become weakened and in

such condition that it could not stand the strain of ordinary use, he was not responsible for the accident. The judge did charge that "had that boiler before it was delivered into the hands of the engineer on that morning ever been overheated so as to weaken it, and was it delivered into his hands in that condition? . . . There is no testimony that he knew anything about this himself. It was a new engine to him. He had not been running it. He had the right to assume when he took that engine at the roundhouse that morning that the boiler was in good and sound working order. He had the right to go ahead and handle that engine on the presumption that it was properly constructed and in proper repair to do the kind of work that it was delivered to him to do, which was to pull that train of thirty-five cars up the road to Winsted."

While the court did not adopt the phraseology of counsel for the defendant, yet these instructions were an accurate statement of the law under the circumstances.

The remainder of the requests to charge were erroneous in form and substance. They occupy five pages of the printed record, and while some of them contain correct statements of law which the court should, and did in effect, charge, yet, on the other hand, these requests contained improper matter which fully justified the trial court in refusing to charge them in their entirety. They asked the court to pass upon contested questions of fact, rather than upon questions of law. They also contained hypothetical propositions unsupported by the evidence. The jury would have been confused and misled, rather than enlightened, if these requests had been given as the defendant presented them.

The following passage in the charge is assigned as erroneous: "But there is no question on the evidence

here, that I can find, but that you would be bound to find that the reason why he fell upon the ground and received the injury that he did, was the explosion that happened. I do not think there is any evidence that makes it worth while to discuss anything else, so we will say that is agreed, and the claim is, that that explosion was caused by the negligence of the engine-driver, the defendant in the case, Mr. Gilbert."

Upon this point the defendant contended that the jury must have understood the court to instruct them that the explosion was caused by the defendant. Such is not a fair construction of the remarks of the court questioned by this assignment. The court, in using this language, was merely reciting the claim of the parties, and trying to impress upon the jury that the defendant could only be held liable for the negligence alleged in the complaint.

The judge stated to the jury that there was no dis- pute about the explosion of the boiler, the duty of the defendant as an engineer, and that the plaintiff was seriously injured in consequence of the explosion. In making these statements the court was fairly borne out by the testimony. This assumption of facts, about which there had been no controversy, was not error, nor did it prejudice the defendant's case.

Exception is taken to a part of the charge in which the court said: "Starting, of course, with the assumption that the engine is in good order and delivered in good order into the hands of the engineer, and then something happens to it, and that something is of such a character that it was within the control and within the duty, within the line of the engineer's duty to control, if something happens within that line, why, of course, the engineer is responsible for it." These statements, when taken alone, appear objectionable; but they did not stand alone upon this branch of the

case, and they must be read and interpreted with the instructions upon this subject taken as a whole. An examination of them shows that the law relating to the burden of proof was fully explained. It also shows that the court expressly called the attention of the jury to the fact that there was no presumption of negligence on the part of the defendant because the boiler exploded.

The court, carefully and in detail, explained the claims of the defendant in this connection.

The jury, as men of intelligence, could not have derived from the charge the impression that they were to assume that the engine was all right when the defendant took it.

The plaintiff, as a part of his case, introduced evidence to prove that he had been permanently injured, and rendered lame and unable to walk, by reason of the accident, and as a part of his evidence he introduced the testimony of one Doctor Keegan, who minutely described a wooden machine, called a perambulator, which the plaintiff, with the assistance of this witness, learned to use in moving about the New Haven hospital, where he was staying for treatment of his injuries. A photograph of the perambulator, with the plaintiff in it, was admitted in evidence after it had been shown to Doctor Keegan, and he had stated that it was a correct representation of the matters in question. The accuracy sufficient for the admission of a photograph as evidence is a preliminary question of fact to be determined by the trial judge. *McGar* v. *Bristol,* 71 Conn. 652, 655, 42 Atl. 1000; *State* v. *Cook,* 75 Conn. 267, 270, 53 Atl. 589. In the present case it appears that the witness Keegan had the opportunity of becoming familiar with the appearance of the objects represented in the photograph, and was competent to speak of the accuracy of their representation

from personal observation.  No claim was made by the defendant that the photograph did not correctly portray the things then under investigation.  The principal objection to its admission was that the photograph must be vouched for by the photographer who took it before it could be admitted.  Such a contention is not in harmony with the declarations of this court.  *McGar* v. *Bristol*, 71 Conn. 652, 655, 42 Atl. 1000.

The plaintiff called as a witness one Harry C. Oviatt, who stated that he was a locomotive fireman from 1889 to 1894; locomotive engineer from 1894 to 1900; yard track constructor from 1900 to 1903; master mechanic from 1903 until 1910; and general inspector of the mechanical department of the New York, New Haven and Hartford Railroad Company from 1910 until his testimony was given in April, 1912.  The witness was then asked the following questions: "Q. Whose duty is it to keep the crown-sheet covered with water in operating the engine?  Q. Whether or not any circumstances in regard to the grade or change of position of the engine changes that duty in any way?  Q. Whose duty is it to examine the glass and see it is in proper order in the proper operation of a steam engine?"  To these questions counsel for the defendant objected, on the ground that they were incompetent, immaterial, and irrelevant.  The trial court permitted the questions to be put, and the defendant excepted.

These inquiries related to material matters which were not the subject of general knowledge, but dependent on facts which, from their nature, it would be difficult to place before the jury.  The statements embodied in the answers of Oviatt were necessarily facts drawn from his peculiar knowledge, practical experience, and skill in the operation and control of locomotive engines.  "The rule as to experts is, that 'in cases involving questions of science and skill, or relating to

some art or trade, experts are permitted to give opinions; the principle embraces all questions except those, the knowledge of which is presumed to be common to all men. So the business which has a particular class devoted to its pursuit, is an art or trade within that rule.'" *Taylor* v. *Monroe*, 43 Conn. 36, 43, 44. There was no occasion to question the competency of Oviatt as an expert to testify upon the subject-matter brought to his attention by these interrogatories. It clearly appears that he must have been experienced in the business relating to the questions propounded.

The criticism upon the charge of the trial judge that it was not a competent and adequate statement of the issues between the parties and of the questions of law arising thereon, that it was argumentative, and unduly magnified a part of the evidence which was favorable to the plaintiff, and minimized that which was favorable to the defendant, is not well founded.

The record discloses that the instructions given presented the issues in a plain, concise, and accurate manner. They could not have been misunderstood. The law adapted to these issues was correctly stated and sufficient for the guidance of the jury. That the trial judge commented upon the evidence, and in some expressions indicated his opinion upon the questions controverted before him, is not a subject for reversal, so long as he did not invade the province of the jury by withdrawing from their consideration any of the controverted facts with evidence to support them, or lead the jury to suppose that the determination of such facts was not wholly with them.

We have read the entire charge with care, and are unable to agree with the contention of the defendant, that it was an unfair or an improper presentation of the case.

The other assignments of error are of such a nature that the defendant has no reason to complain of the action of the trial court thereon.

There is no error.

In this opinion the other judges concurred.