CLARA SHIRLOCK *vs.* JOHN A. MACDONALD, HIGHWAY COMMISSIONER.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued June 2d—decided July 10th, 1936.

*Albert B. Walker,* for the appellant (plaintiff).

*Olcott D. Smith,* for the appellee (defendant).

HINMAN, J. The bridge to which this action relates is located on a state highway in the town of Canton and is under the control and supervision of the defendant. Shortly after noon on September 17th, 1934, while the plaintiff's truck, which weighed about eighty-seven hundred pounds, empty, was being driven across this bridge it suddenly gave way, the floor dropped some distance, and the truck was damaged. The finding states that there had been an unusually severe rainfall, commencing in the previous night and continuing up to the time of the accident, which had caused the brook crossed by the bridge to rise so that, as plaintiff's driver approached it, the water overflowed the floor about six inches. About twenty minutes previous another truck of the plaintiff weighing, with load, over sixteen thousand pounds had crossed in safety. This bridge is one of three thousand and

twenty-eight which are under the control of the highway commissioner, all of which are inspected once a year by a competent engineer, and if repairs are necessary, another inspection is made after the repairs have been completed. This bridge was so inspected, on May 1st, 1934, by the chief bridge inspection engineer and found to be in good condition.

The plaintiff presented no evidence as to the cause of the accident or of any specific act, neglect or omission on the part of the defendant which was a substantial factor therein. She claimed, however, that the doctrine of res ipsa loquitur was available and that, by virtue of it, by showing that the bridge gave way when her truck was driven upon it, she made out a prima facie case, and assigns error in the trial court's ruling that this doctrine did not apply.

This action is specifically, and necessarily, brought under § 1481 of the General Statutes which affords a right of recovery from the State, through the highway commissioner as its representative, similar to that given by another statute (§ 1420) against municipal corporations for damages from defective highways, and is subject to like limitations. *Perrotti* v. *Bennett*, 94 Conn. 533, 542, 109 Atl. 890; *Falkowski* v. *MacDonald*, 116 Conn. 241, 243, 164 Atl. 650. A cause of action under either of these statutes is not really one to recover damages for an injury arising from negligence but for breach of a statutory duty. *Porpora* v. *New Haven*, 119 Conn. 476, 479, 177 Atl. 531; *Bartram* v. *Sharon*, 71 Conn. 686, 43 Atl. 143. Thus the present action is for damages alleged to have arisen from breach of duty imposed by a statute, now § 523c, Cum. Sup. 1935, and which was § 398b, Cum. Sup. 1933, at the time of the injury.

In a case seeking recovery for damage from defects in a highway, it is a prerequisite of liability that the

authority charged with maintenance shall have had either actual notice of the defect or constructive notice through its existence for such a length of time that it would have been known in the exercise of reasonable care, and a reasonable opportunity afforded to remedy it. *Falkowski* v. *MacDonald*, supra, p. 243. Here, similarly, it must be shown that the deficiency which occasioned the subsidence of the bridge was of such duration that reasonable care in inspection would have disclosed it and that thereafter reasonable opportunity was had to remedy it. The doctrine of res ipsa loquitur is applicable in negligence actions when the concurrence of specified conditions justifies the inference, from proof of injury, that "it could not in the general experience have happened unless there had been a want of due care." *Schiesel* v. *Poli Realty Co.*, 108 Conn. 115, 121, 142 Atl. 812; *Jump* v. *Ensign-Bickford Co.*, 117 Conn. 110, 120, 167 Atl. 90. One (the second) of these conditions is that not only the inspection but also the "user" must have been at the time of the injury in the control of the party charged with neglect. *Jump* v. *Ensign-Bickford Co.*, supra, p. 121. It is obvious that the highway commissioner does not have such a relation and duty to each and all of the more than three thousand bridges within his jurisdiction as would afford him the continuous knowledge of conditions developing or occurring which is contemplated by the user which this element of the rule requires. This is sufficient to render the doctrine inappropriate and inapplicable in the present action and the trial court did not err in so concluding.

The statute, § 398b, Cum. Sup. 1933, upon an alleged breach of which this action is grounded, provides that "each highway bridge existing July 1, 1921, maintained by the state, in whole or in part, shall be so maintained as to insure a safe carrying capacity of not

less than eight tons, and each such bridge constructed thereafter shall maintain a safe carrying capacity of not less than eighty pounds to the square foot, and shall safely carry any vehicle having a weight, with the weight of the load, of fifteen tons." The finding states that the bridge here in question was in existence on July 1st, 1921, and "had a safe carrying capacity of not less than eight tons." The plaintiff, on the trial, advanced a claim, however, that the duty imposed upon the defendant by this statute is that of an insurer, amounting, as she indicated in her brief, to an absolute obligation to so maintain the bridge as to make it secure "against the possibility of any accident short of an act of God." This contention is based upon the presence, in the portion of the statute which covers this bridge, of the word "insure" which is seized upon as evincing, it is claimed, a legislative intent to insure users of such bridges "that, barring acts of God, they would be safe in their use" at least up to the specified carrying capacity.

This statute was originally passed as § 12 (a) of Chapter 305 of the Public Acts of 1917, "An Act concerning the Use of Vehicles on Public Highways," the prescriptions as to carrying capacity, both as to existing and subsequently constructed bridges, applied to those maintained by the State or any subdivision thereof, and it was provided (b) that "upon the failure of the proper authority to comply with the provisions of this section, the highway commissioner shall issue warning to such authority and thereafter may apply to the Superior Court for a mandamus." It was included, as § 1578, in Chapter 78, "Rules of the Road," General Statutes, 1918. In 1921, Chapter 334 of the Public Acts, § 10, the scope of the regulation of carrying capacity was limited to bridges maintained by the State, in whole or in part, and there was sub-

stituted for the provision last quoted the following: "Upon the application of any person, under the provisions of [§ 1471, General Statutes, 1930], the highway commissioner may, after due notice and hearing to all parties in interest, require the authority having control of any bridge to increase the capacity of such bridge to eight tons," and upon failure to comply with such order may construct or repair the bridge at the expense of such authority.

Previously the statute had not prescribed any standard to which bridges should conform either in form or strength. *Wilson* v. *Granby,* 47 Conn. 59, 66. The plain purpose was to prescribe, as to both classes of bridges, the maintenance of a specified minimum carrying capacity. In general the limit of duty imposed on those having control of highways "falls far short of making [them] absolutely safe under all circumstances, even for those who use them properly." *Wilson* v. *Granby,* supra, p. 73. Our statutes have long provided that towns shall build and repair necessary highways and bridges and that any person injured by means of a defective road or bridge may recover damages therefor. General Statutes, §§ 1411, 1420. In addition to this general provision, the statutes have for many years provided that the party bound to maintain any bridge or road "shall erect and maintain a sufficient railing or fence" on the side of such bridge or such part of the road as is so raised above the adjoining ground as to be unsafe for travel and that any person suffering damage by reason of the want of such a railing or fence may recover damages. General Statutes, § 1419. The test of liability under these statutes is whether or not the party bound to maintain the highway or bridge has exercised reasonable care to make it reasonably safe. *Porpora* v. *New Haven,* 119 Conn. 476, 479, 177 Atl. 531. There is no more

warrant for construing the statute in question as imposing an absolute duty than in the case of the other statutes to which we have referred.

We do not find persuasive the appellant's suggestion that the considerations that defects in roads can be seen and avoided, and fences and railings are for use solely in emergencies, afford a ground for distinction between the duty as to them and that pertaining to the carrying capacity of bridges. It is our opinion that the use of the term "insure" in the statute is attributable to a choice which was not the most happy from among the words, including also "ensure, secure, and assure," having significances including to make certain the attainment of an object or thing, and that it was employed in that sense rather than in the connotation of "insure" as indemnifying against loss by a contingent event. Webster's New International Dictionary. We concur, therefore, in the trial court's conclusion that the statute does not make the defendant an insurer in the latter sense as to the bridge here involved.

There is no error.

In this opinion the other judges concurred.